UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LAMAR BURTON,

                  Plaintiff,                      Case No. 1:20-cv-854

v.                                        Honorable Paul L. Maloney

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                  Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections, Grievance Coordinator Wellman, Warden Skipper, Inspector Bonn, and Program Manager Breedlove. The Court will also dismiss for failure to state a claim all of Plaintiff's claims against Corrections Officer Field, Dr. Patel, and Psychologist Fox, except for Plaintiff's Eighth Amendment claims against Defendant Field for his deliberate indifference to Plaintiff's health and safety and Plaintiff's Eighth Amendment claims

against Defendants Fox and Patel for their deliberate indifference to Plaintiff's serious mental health needs following his placement in segregation on January 15, 2020.

<u>Discussion</u>

## I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains, however, occurred at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan.  Plaintiff sues the MDOC and several individuals who work at RMI: Warden Unknown Skipper, Corrections Officer Unknown Field, Program Manager Unknown Breedlove, Inspector Unknown Bonn, Grievance Coordinator Unknown Wellman, Psychologist Mark Fox, and Dr. Kirtida Patel.

Plaintiff alleges that on October 17, 2019, fellow inmate Peake, a gang member, savagely attacked Plaintiff, damaging Plaintiff's eye.  Plaintiff contends that Defendant Field witnessed the attack and did nothing to stop it.  Plaintiff claims that Field allowed Peake to come into Plaintiff's cell, closed the gate, and then opened it again for Peake after he had finished beating Plaintiff.  Plaintiff reports that Peake and his fellow gang members told Plaintiff that would stab him if he "snitched."

The next day, other corrections officers noticed Plaintiff's bandaged eye.  Officer Olezkiewizc examined Plaintiff's eye and called the sergeant over.  The sergeant walked Plaintiff to healthcare and then back to the officer's station.  On the way, inmate Peake and his fellow gang members warned Plaintiff against snitching or he would be stabbed.  The sergeant watched the video of the incident and told Plaintiff that he had.  Fearing for his life, Plaintiff told the sergeant that he had been bitten by a spider.

The sergeant clearly did not believe Plaintiff's story.  He called out inmate Peake, placed him in handcuffs, and took him to segregation.  Thereafter, Plaintiff was constantly bullied by members of Peake's gang.  He was invited to join them or be stabbed.  Eventually Plaintiff joined the gang.  For a few weeks, Plaintiff moved contraband for the gang.  He did what he was told out of fear for his own safety and the safety of his family.

On January 8, 2020, inmate Peake ordered Plaintiff to stab inmate Throneberry for an unpaid drug debt.  Plaintiff claims that on January 10, 2020, Defendant Field let Plaintiff out of his cell to permit Plaintiff to carry out Peake's order.  Plaintiff stabbed Throneberry several times.

Plaintiff was put on room confinement/toplock.  Plaintiff contends he should have gone to segregation or been transferred.  Inmate Peake ordered Plaintiff to stab another inmate.

Plaintiff suffers from mental disorders including PTSD, paranoia, and bipolar. Following the January 10 stabbing incident he was unable to sleep.  He sent in healthcare requests. On January 15, 2020, he saw Defendant Fox and informed Fox what had happened.  Fox brought Plaintiff to Defendant Bonn.  Plaintiff explained everything to Defendant Bonn.  Bonn asked if Plaintiff had more weapons.  Plaintiff acknowledged that he did.  Unit staff shook down Plaintiff's cell and found two stabbing implements.  Plaintiff was taken to segregation.

In the two weeks that followed, Plaintiff sent several kites to mental health services. Defendant Patel told Plaintiff on January 23, 2020, that he had an appointment to see the doctor the next week.  On January 28, however, Plaintiff was told to pack up for transfer to a different facility.  The next night, he attempted suicide by hanging and slashing his wrist.  He was taken to Ionia Hospital.  Upon his return, he was placed on suicide watch.  Plaintiff was seen by an unknown doctor on February 3 and prescribed new medication.  On February 12, 2020, Plaintiff was transferred to Ionia.

Plaintiff was on modified access to the administrative grievance procedure during the period he describes in his complaint.  Several times over the course of this five-month period, Plaintiff sent requests to Defendant Wellman for grievance forms.  Wellman routinely refused.

Several times during this period, Plaintiff sent kites to Warden Skipper, Inspector Bonn, or Program Manager Breedlove.  Plaintiff contends the kites should have put these defendants on notice that Plaintiff's health and safety were in danger from inmate Peake and his fellow gang members.  These Defendants, however, took no steps to protect Plaintiff.

Plaintiff contends that all of the Defendants conspired together to deprive him of his constitutional rights.  He claims that Defendants violated his right to due process and representation, in violation of the Fifth Amendment; that Defendants were deliberately indifferent to Plaintiff's serious medical needs and that their indifference to his health and safety constitutes cruel and unusual punishment in violation of the Eighth Amendment; he states that Defendants violated his right to freedom of religious practice; he claims that Defendants retaliated against him for exercising his First Amendment rights; and that Defendants violated Plaintiff's equal protection rights under the Fourteenth Amendment.

Plaintiff seeks declaratory relief, as well as compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $900,000.00, costs, and unspecified injunctive relief.  Additionally, Plaintiff asks the Court to grant him an exemption for the State of Michigan Correctional Reimbursement Act, Mich. Comp. Laws § 800.400 et seq.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

4

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.   Sovereign immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh

Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses the MDOC.

## IV.    **Defendant Wellman**

Plaintiff sues Defendant Wellman, but his only allegations against her are that she either did not provide grievance forms because he was on modified access or did not properly process his requests for forms or his grievances. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75

(4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendant Wellman's conduct did not deprive him of due process.

Petitioner's right to petition the government is not violated by Defendant Wellman's failure to process or act on his grievances.  The First Amendment "right to petition government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views."  *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).  Moreover, placement on modified access does not prohibit an inmate from utilizing the grievance process.  *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445-47 (6th Cir. 2005); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001).  The inmate may still submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances.  There is nothing constitutionally improper about this review process for a prisoner who has demonstrated an inability to properly utilize the grievance process in the past.

The First Amendment protects the administrative grievance process in one respect: a prison official cannot retaliate against a prisoner for using the grievance process.  The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that

conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Even accepting that Plaintiff's repeated requests for grievance forms were protected conduct, Plaintiff cannot show that Defendant Wellman took adverse action against him. The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001). Placement on modified access would not deter a person of ordinary firmness from continuing to engage in protected conduct, because modified-access status does not impair the ability to file civil rights actions in federal court. A plaintiff's placement on modified access to the grievance procedure merely enables prison officials to screen grievances prior to filing to determine whether they were grievable, non-frivolous, and non-duplicative. *See Kennedy*, 20 F. App'x at 471 (citing Mich. Dep't of Corr. Policy Directive 03.02.130(II)(PP)).

Finally, the Sixth Circuit held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.*

For all of these reasons, Plaintiff has failed to state a claim against Defendant Wellman.

8

## V.     Free Exercise

The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]."  U.S. Const. amend. I; *see also Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding that the Fourteenth Amendment incorporates the First Amendment's protections against states).  While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion.  *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Allegations to support a free exercise claim are conspicuously absent from Plaintiff's complaint.  It appears that he included a list of constitutional rights from another complaint and simply checked off every constitutional right that was on the list.  (Compl., ECF No. 1, PageID.12.)  There are no factual allegations to support such a claim.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555.

## VI.     Due process

Plaintiff claims Defendants denied him due process as guaranteed by the Fifth Amendment.  Whether under the Fifth Amendment or the Fourteenth Amendment, the elements of a procedural due process claim are:  (1) a life, liberty, or property interest requiring protection

under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Plaintiff does not identify a protected liberty or property interest in his complaint. Plaintiff does not suggest he was denied due process in connection with the disciplinary proceedings. Indeed, he indicates that his transfer to segregation was appropriate. There are no factual allegations to support Plaintiff's due process claim.

## VII.    Right to representation

The Supreme Court has made clear that prisoners do not have a right to either retained or appointed counsel in prison disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 570 (1974). Plaintiff does not make any allegations indicating that he was entitled to representation at any time. His reference to the right to representation appears to be accidental. He has certainly failed to state a claim for denial of such a right.

## VIII.   Equal protection

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Plaintiff mentions "equal protection" a few times in his complaint, (Compl., ECF No. 1, PageID.2, 12, 13), but he does not allege facts that support such a claim.

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365n, 379 (6th Cir. 2011) ("To state an equal protection

claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").  Plaintiff does not even allege disparate treatment here, except his contention that other prisoners who committed an assault like the assault Plaintiff committed would have been sent to segregation while Plaintiff received only toplock.  Plaintiff fails to explain how that difference harmed him.

Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Accordingly, Plaintiff has failed to state a claim for violation of his equal protection rights.

**IX.     Eighth Amendment**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37.  To satisfy the objective prong, an inmate must show "that he is

11

incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### A.    The risk of harm from Peake and his gang

Plaintiff contends that inmate Peake and the members of his gang posed a substantial risk of serious harm. Plaintiff's allegations clearly show that Defendant Field was aware of that risk and purposely ignored it. Plaintiff has stated an Eighth Amendment claim against Defendant Field.

Whether other prison officials knew of the risk of harm and then disregarded is not as clear, based on Petitioner's allegations.

### 1.    Warden Skipper

Plaintiff alleges that he informed Warden Skipper of the risk of harm presented by Peake and his fellow gang members by kite. He attaches the kites to his complaint. Plaintiff first kite to "Inspector Bonn/Warden" is dated October 21, 2019. He asks the recipients to save the video footage of the assault by Peake assisted by Field. (Kites, ECF No. 1-30, PageID.46.) He closes with the statement "Due to this kite you now have actual knowledge of my request." (*Id.*) Plaintiff prepared the kite on the form he used to request grievance forms from Ms. Wellman. It is not clear whether the kite as prepared on that form would have been delivered to and/or read by Defendants Bonn or Skipper.

Plaintiff reports that his next kite to the warden dated October 26, 2019, complained of Ms. Wellman's refusal to provide a grievance form. He does not provide a copy of the kite.

On November 20, 2019, Plaintiff addressed a kite to "RMI Inspector & warden." (Kites, ECF No. 2-29, PageID.45.) In that kite, Plaintiff references the beating by Peake, the ongoing bullying and threats from other gang members, the gang members compelling Plaintiff to do illegal acts, and Plaintiff's concern that Defendant Field is in on the gang activity. (*Id.*) The kite, however, is on one of the forms Plaintiff used to request an administrative grievance form. It is not clear whether it would have been delivered to and/or read by Inspector Bonn or Warden Skipper.

The next kite is dated January 5, 2020. It is addressed to Warden Skipper & Breedlove. Defendant Breedlove served as a program manager at RMI. According to Plaintiff, Breedlove was in charge of the employment readiness class that Plaintiff was taking in anticipation of his release. In this kite, Plaintiff informed the warden and program manager that he did not feel safe around inmate Peake, who was also in the class, because Peake had physically assaulted Plaintiff on October 17, 2019. (*Id.*) Plaintiff asked that Peake be removed or, in the alternative, that Plaintiff be removed from the class. (*Id.*) Plaintiff closed by informing the warden and Breedlove that now, "you both have actual knowledge of my request." (*Id.*) Again, however, the kite was written on the form for requesting an administrative grievance form. It is not clear whether it would have been delivered to and/or read by Defendants Breedlove or Skipper.

The next kite is dated January 13, 2020. It is addressed to "warden, inspector, and such and such." (*Id.*) Plaintiff reports that he is being bullied and pressured by gang members to do "dirty work." (*Id.*) He reports that he just stabbed a guy on January 10, and that he is afraid for his life. (*Id.*) Again, Plaintiff closes with the following: "Due to this kite you now have actual

13

knowledge." (*Id.*)  Once again, the kite was written on the grievance request form.  It is not clear whether it would have been delivered to and/or read by Defendants Bonn or Skipper.

Finally, Plaintiff provides a second kite addressed to Inspector Bonn and Warden Skipper dated January 13, 2020.  (Kites, ECF No. 1-31, PageID.47.)  Plaintiff requests that the video footage of the stabbing be saved to show that Defendant Field was complicit with the gang.  (*Id.*)  Plaintiff closed with "due to this kite you now have actual knowledge of my request."  (*Id.*)  Again however, the kite was written on the form Plaintiff was supposed to use to request grievance forms from Ms. Wellman.  It is not clear whether it would have been delivered to and/or read by Defendants Bonn or Skipper.

With regard to all of these kites, Plaintiff reports only that the Defendants did not respond.  The only other direct involvement of the warden, according to Plaintiff, was the warden's response to a grievance against Defendant Wellman at step II.  That response occurred on January 28, 2020.  (Grievance, ECF No. 1-31, PageID.48-52.)

Plaintiff's assertion that Warden Skipper had knowledge of the risk of harm is based completely on Plaintiff's kites.  Given the form of the kites, however, and the manner in which they were addressed, it appears unlikely that the kites would have made their way into the hands of the warden.  Accordingly, Plaintiff's allegation that the warden had knowledge of a risk of harm to Plaintiff is entirely conclusory; the allegation is not sufficient; and Plaintiff has failed to state an Eighth Amendment claim against Defendant Skipper.

### 2.     Psychologist Fox

Plaintiff first mentions Psychologist Fox in reference to a kite Plaintiff sent on January 13, 2020, three days after he had stabbed the other inmate.  (Compl., ECF No. 1, PageID.8.)  Instead of a kite, Plaintiff attaches to his complaint a health care request submitted on January 13, 2020, which states, "Request to talk to Mr. Fox who is my [psychologist] w/o excessive

14

delay." (Health Care Request, ECF No. 1-34, PageID.56.) Plaintiff sent another request on January 14, 2020. (Health Care Request, ECF No. 1-41, PageID.64.) Plaintiff stated: "[T]o whom it may concern, I request to see my [psychologist] Please exercise ordinary knowledge skill/care A.S.A.P. ([psychologist] name is Fox)." (*Id.*)

Plaintiff saw Psychologist Fox on January 15, 2020. (Compl., ECF No. 1, PageID.8.) Fox immediately called Inspector Bonn and walked Plaintiff down to the inspector's office. (*Id.*, PageID.9.) Plaintiff reported his possession of weapons, which led to charges, and his placement in segregation that day.

Plaintiff does not identify any communications with Defendant Fox prior to January 13. In that communication, and another one the following day, Plaintiff said nothing more than that he wanted to see Fox. He did not inform Fox of any risk of harm until January 15, and Fox acted immediately to address the risk.

Plaintiff sought to have Fox testify as part of his hearing on the misconduct. The hearing investigator exchanged emails with Fox regarding the matter. (Emails, ECf No. 1-19, PageID.35.) Fox informed the investigator that Plaintiff asked to see Fox without explaining why and, when they met, Plaintiff explained the circumstances and Fox took Plaintiff to Inspector Bonn. Fox informed the investigator that Plaintiff did not send Fox a kite about the gang situation. Fox's explanation is entirely consistent with the documents Plaintiff attaches to his complaint.

With regard to the risk to Plaintiff's safety from Peake and the gang, Plaintiff has failed to allege that Fox was aware of a risk of harm to Plaintiff and then disregarded that risk. To the contrary, Plaintiff's complaint suggests that Defendant Fox acted immediately to address the risk, once he learned of it. Plaintiff has failed to state an Eighth Amendment claim against Fox relating to the risk of harm from the gang.

### 3. Inspector Bonn

For the same reason the Court concludes that Plaintiff's "kites" to the warden fail to support the inference that the warden knew of a risk of harm to Plaintiff, the Court concludes the kites to Inspector Bonn likewise fail to support the inference that Bonn knew of a risk of harm to Plaintiff. When Plaintiff attempted to enlist Bonn as a witness for his misconduct hearings, Bonn also denied having ever received any kites about Plaintiff's situation. (Emails, ECF No. 1-20, PageID.36.)

Other than the kites, the only way Bonn knew of a risk was by way of his conversation with Plaintiff on January 15, 2020. Bonn acted immediately and Plaintiff was placed in segregation the same day. Accordingly, the Court concludes that Plaintiff has failed to allege facts that support the inference that Bonn knew of a risk of harm to Plaintiff prior to January 15, 2020, and Plaintiff has failed to allege facts that support the inference that Bonn disregarded that risk once he was aware of it. Plaintiff alleges only the unsupported conclusion that Bonn knew of the risk and disregarded it. Plaintiff has failed to state an Eighth Amendment claim against Defendant Bonn.

### 4. Program Manager Breedlove

Plaintiff reports only one kite contact with Defendant Breedlove: a January 5, 2020, kite, wherein Plaintiff asked that either Peake or Plaintiff be removed from the Employment Readiness Class because Peake had assaulted Plaintiff three months earlier. Plaintiff made no reference to the continuing threats against his safety or the safety of his family from Peake and other gang members. Even if Defendant Breedlove received this kite—and the circumstances do not support that inference—Plaintiff's reference to a three-month old assault hardly informed Breedlove of the ongoing daily threat that Plaintiff faced. Therefore, the Court concludes that Plaintiff has failed to allege facts that Defendant Breedlove was aware of the risk of harm that

16

Plaintiff faced and, with that knowledge, disregarded the risk.  Accordingly, Plaintiff has failed to state an Eighth Amendment claim against Defendant Breedlove.

**B.      Deliberate indifference to Plaintiff's serious mental health needs**

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment requires prison officials to provide medically necessary mental health treatment as well.  *See Estelle*, 429 U.S. at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer*, 511 U.S. at 834.  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cty.*, 534 F.3d 531, 540 (6th Cir. 2008).

Plaintiff claims that Dr. Patel and Psychologist Fox were deliberately indifferent to his serious medical needs in that they were aware of his history of suicide attempts but ignored his desperate pleas to see one or both of them between the date he went into segregation on January

15, 2020, and the date he attempted suicide on January 29, 2020.  The Sixth Circuit recently addressed the showing required to establish deliberate indifference to the risk of suicide:

> "[I]it is not enough to establish that an official may have acted with deliberate indifference to some possibility of suicide, or even a likelihood of suicide; the test is a strong likelihood of suicide."  *Galloway v. Anuszkiewicz*, 518 F. App'x 330, 336 (6th Cir. 2013); *see also Barber*, 953 F.2d at 239-40 (holding that a prison official must have "knowledge of a strong likelihood," not just a "mere possibility," that an inmate will attempt suicide); *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660-61 (6th Cir. 1994) (same).  This is a high bar and typically requires evidence that the inmate was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm.  *See Grabow v. Cnty. of Macomb*, 580 F. App'x 300, 309 (6th Cir. 2014) (collecting cases).

*Downard v. Martin*, 968 F.3d 594, 601 (6th Cir. 2020).  The Court concludes that Plaintiff's allegations clear this "high bar."  Plaintiff's alleges that Dr. Patel and Psychologist Fox were aware of his prior suicide attempts and aware of his desperate requests for mental health treatment.  Accordingly, the Court concludes that Plaintiff has sufficiently stated an Eighth Amendment claim for deliberate indifference to serious medical needs against Dr. Patel and Psychologist Fox.

## X.    First Amendment retaliation

Plaintiff suggests that all of the Defendants retaliated against him.  As noted above, to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Although Plaintiff may have been engaged in protected conduct when he prepared kites seeking grievance forms or complaining about the Defendants or Peake or his gang, he has not shown that any of the persons who took adverse action against him were motivated by those complaints.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005);

*Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.");  *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).  Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants retaliated against him because he filed or attempted to file a grievance.  Accordingly, his speculative retaliation allegations fail to state a claim.

## XI.    Conspiracy

Plaintiff states that Defendants' acts were "conspiratory."  (Compl., ECF No. 1, PageID.2.)  He also states that Defendants "worked in coordination."  (*Id.*, PageID.13.)  A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action."  *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that

support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524

F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez*

*v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are wholly conclusory.  He alleges no facts that

indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective.

Instead, Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe a

number of discrete occurrences over a period of time involving numerous individual RMI staff.

He appears to rely entirely on a highly attenuated inference from the mere allegation that he has

been subjected to objectionable treatment by a variety of prison officials or that prison officials

have not fixed his problems.  As the Supreme Court has held, such allegations, while hinting at a

sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest

that an agreement was made."  *Twombly*, 550 U.S. at 557.  Instead, the Court has recognized that

although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state

a claim where that conduct "was not only compatible with, but indeed was more likely explained

by, lawful, unchoreographed . . . behavior."  *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at

567).  In light of the far more likely possibility that the various incidents occurring over the five-

month period at issue in Plaintiff's complaint were unrelated, Plaintiff fails to state a plausible

claim of conspiracy.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the

Court determines that Defendants MDOC, Wellman, Skipper, Bonn, Breedlove,  will be dismissed

for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will also dismiss, for failure to state a claim, all claims against the remaining

Defendants—Field, Fox, and Patel—except for Plaintiff's Eighth Amendment claims against

Defendant Field for his deliberate indifference to Plaintiff's health and safety and Plaintiff's Eighth Amendment claims against Defendants Fox and Patel for their deliberate indifference to Plaintiff's serious mental health needs following his placement in segregation on January 15, 2020.  Those Eighth Amendment claims are the only claims that remain in the case.

An order consistent with this opinion will be entered.


Dated:   September 24, 2020                    /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               United States District Judge